J-S24001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| QUINTON BRIGHT | |
| Appellant | No. 2924 EDA 2013 |

Appeal from the Judgment of Sentence June 14, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0015523-2010

BEFORE:  GANTMAN, P.J., ALLEN, J., and MUSMANNO, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED MAY 15, 2015**

Appellant, Quinton Bright, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his convictions for firearms not to be carried without a license, theft by unlawful taking or disposition, and persons not to possess firearms.[1]  We affirm.

In its opinion, the trial court fully and correctly sets forth the relevant facts and procedural history of this case.[2]  Therefore, we have no reason to restate them.

Appellant raises the following issue for our review:

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1), 3921(a), and 6105(a.1)(1), respectively.

[2] The trial court's opinion at page 5, footnote 4 cites to **Commonwealth v. Vandivner**, 962 A.2d 1170, 79 (Pa. 2009).  The correct citation is **Commonwealth v. Vandivner**, 962 A.2d 1170, <u>1179</u> (Pa. 2009).

> DID NOT THE COURT ERR BY DENYING APPELLANT'S MOTION TO SUPPRESS THE TESTIMONY OF WITNESS MARTEL DAVIS AS FRUIT OF THE POISONOUS TREE SINCE THE IDENTITY AND TESTIMONY OF THIS WITNESS WAS OBTAINED THROUGH [APPELLANT'S] SUPPRESSED AND INVOLUNTARY STATEMENTS TO POLICE, AND THE [TRIAL] COURT'S ASSERTION THAT THE IDENTITY OF MARTEL DAVIS AS A WITNESS WOULD HAVE BEEN INEVITABLY DISCOVERED WAS NOT SUPPORTED BY THE RECORD?

(Appellant's Brief at 3).[3]

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Drumheller**, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (quoting **Commonwealth v. Stallworth**, 566 Pa. 349, 363, 781 A.2d 110, 117 (2001)).

> Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

**Drumheller, supra** at 135, 808 A.2d at 904 (quoting **Stallworth, supra** at 363, 781 A.2d at 117-18).

After a thorough review of the record, the briefs of the parties, the

---

[3] Notwithstanding the phrasing of Appellant's issue, his complaint on appeal is that the court erred in denying his motion *in limine* to preclude the live, voluntary testimony of Martel Davis at trial. The court actually suppressed Appellant's confession and the statement of Martel Davis obtained by police as a result of the confession.

applicable law, and the well-reasoned opinion of the Honorable Linda Carpenter, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed August 20, 2014, at 7-8) (finding: Martel Davis could testify at trial because he appeared in court willingly and without force, and his testimony was voluntary; ongoing police investigation removed taint of unlawful police conduct because investigation would have occurred without Appellant's involuntary statement; police obtained numerous phone records and statements from other witnesses who placed another individual with Appellant at time of shooting; police would have continued to investigate who else was with Appellant on night of shooting, and who else made phone calls around time of shooting; continued investigation would have revealed identity of Mr. Davis through means independent of Appellant's involuntary statement; court properly concluded taint was removed and, therefore, Mr. Davis could provide live testimony if he appeared for trial of his own volition). The record supports the trial court's decision; therefore, we see no reason to disturb it. Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/15/2015

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
TRIAL DIVISION – CRIMINAL SECTION**

FILED

AUG 2 0 2014

Criminal Appeals Unit
First Judicial District of PA

**COMMONWEALTH OF PENNSYLVANIA** :

:

**v.** : **CP-51-CR-0015523-2010**

CP-51-CR-0015523-2010 Comm. v. Bright, Quinton
Opinion

**QUINTON BRIGHT**



7188766381

**OPINION**

CARPENTER, J.                                        August 20, 2014

Defendant Quinton Bright ("Bright") was charged with Homicide, Robbery,

Carrying Firearms Without a License ("VUFA § 6106") (F3), Theft by Unlawful Taking

(F3), and Possession of Firearms by Prohibited Person ("VUFA § 6105") (F2) on bill of

information CP-51-CR-0015523-2010, which arose from the shooting death of Eric

Jones on August 26, 2010 on North Park Avenue in the City of Philadelphia. Although

Bright was charged with killing Jones, the jury only convicted Bright of VUFA § 6106

and Theft by Unlawful Taking and this court subsequently found him guilty of VUFA §

6105. This court requests that the Superior Court uphold the convictions and affirm the

sentence imposed in this matter.

## PROCEDURAL HISTORY

On December 10, 2012 and January 7, 2013 this court conducted a hearing on

Bright's motion to suppress his confession to his involvement in the killing and his

motion to suppress a subsequent statement and/or testimony by Martel Davis, as fruit of

the poisonous tree. Following the hearing, this court held the matter under advisement and on February 7, 2013, suppressed Bright's confession to his involvement in the murder of Mr. Jones, suppressed the statement of Martel Davis, but denied the motion as to the preclusion of Martel Davis as a live witness at trial. Findings were placed on the record.

On March 12, 2013, Bright elected to exercise his right to a jury trial and pled not guilty to the above listed charges. On March 18, 2013, the jury found Bright guilty of Carrying Firearms Without a License ("VUFA § 6106") (F3) and Theft by Unlawful Taking (F3). Following the jury verdict, the Commonwealth and Bright stipulated to the fact that Bright had the requisite predicate offense for a conviction under VUFA § 6105 and this court entered a finding of guilt on that charge. At the conclusion of the trial, this court deferred sentencing to June 14, 2013 for the completion of a Pre-Sentence Investigation report. On June 14, 2013, this court sentenced Bright to 5–10 years of imprisonment on the VUFA § 6105 charge, 3.5–7 years of imprisonment on the VUFA § 6106 charge, and 1.5–7 years of imprisonment on the Theft by Unlawful Taking charge, all to run consecutively, for an aggregate sentence of 10–24 years of imprisonment. On June 20, 2013, Bright filed a Motion for Reconsideration of Sentence, which was denied by operation of law on October 21, 2013.

On October 21, 2013, this court received a Notice of Appeal and on April 29, 2014, upon completion of the notes of testimony, Bright was served an Order directing him to file a concise statement of the matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 20, 2014, this court received Bright's 1925(b) response which raised the following issues on appeal:

1. [This] court erred in not suppressing the testimony of witness Martel Davis as fruit of the poisonous tree since the identity and testimony of this

2

witness was obtained through the defendant's suppressed and involuntary statements to the police.

2. [This] court erred by giving insufficient and/or improper reasons for imposing aggravated range sentences upon the defendant where the court's reasons focused on the defendant's prior criminal record, a factor already accounted for in the defendant's prior record score and the offense gravity scores of the offenses for which aggravated range sentences were imposed.

3. [This] court erred in denying the defendant's motion for mistrial where the prosecutor's questions of witness Martel Davis implicated statements previously suppressed by the court and were calculated to elicit responses from the witness referencing those suppressed statements.

4. The evidence was insufficient to prove beyond a reasonable doubt that the defendant committed a violation of 18 Pa.C.S. 6106 in that the evidence was insufficient to prove that the defendant possessed a "firearm" as that term is defined in 18 Pa.C.S. 6102.

5. The evidence was insufficient to prove that the firearm of which the defendant was convicted of possessing was a loaded firearm, thus justifying a higher offense gravity score than for an unloaded firearm, especially in light of the fact that it is unknown which firearm the defendant was convicted of possessing.

## FACTS

At trial, the testimony was that, on August 26, 2010, Eric Jones ("Jones") and his friend, Sharleen Tindal ("Tindal") drove to the area near the intersection of Allegheny Avenue and Park Avenue in the City of Philadelphia to meet two men seeking to buy Oxycontin pills. Jones parked his green van, exited the vehicle, and began talking with defendant Bright. After hearing the second man shout from the corner that police were in the area, Tindal walked up to the corner, away from Jones and Bright. Moments later, at approximately 10:15 p.m., Tindal heard a gunshot. When she turned around, she saw Jones on the ground and Bright yelled "Bitch, don't move"[1] while pointing a gun

---

[1] N.T. 3/13/2013 at 189:24-25.

3

at her. Tindal ran to the nearby McDonald's and asked someone to call the police. While inside the McDonald's, Tindal got a call from Bright, who told her "Bitch, I'm watching you. You better not say nothing."[2] An autopsy revealed that Jones was killed by a single .25 caliber gunshot wound to the back of his head. The day after the shooting, Bright drove the victim's van to the home of his cousin, Martel Davis ("Davis") and gave Davis a silver revolver. A couple of days later, Davis sold the gun and also gave Bright another gun.

Meanwhile, the day after Jones was killed, at approximately 5:30 a.m., Jones' fiancée, Tamara Thompson, filed a vehicle theft report indicating that Jones' 1998 green Chevy Venture van with Pennsylvania license plate HFB-3621 was last seen between 9:30–10:30 p.m. on the evening of the killing. The Homicide Unit was notified of the theft report and the vehicle information was entered into the police computer system as a stolen vehicle at approximately 12:50 p.m.. Detective Fetters then put out a general (otherwise known as an all-points bulletin (APB)) for a green van in the Germantown section of the city. Through the continued police investigation, Detective Fetters learned that Officer Castor of the Philadelphia Parking Authority had issued a ticket to the vehicle on August 30, 2010 at 9:13 p.m. on the 200 block of North 12th Street for an expired registration.

The green van was located on the 500 block of King Street, approximately ten days later, and was kept under surveillance in that area. On September 4, 2010, Officer Spain pulled the van over with Bright in the driver's seat and a female, named Deona Edmonds ("Edmonds"), in the passenger seat. Because of the APB, Officer Spain already knew that the van was registered in the name of Eric Jones and upon obtaining

---

[2] N.T. 3/13/2013 at 193:1-2.

4

Bright's identification, Bright claimed that he had gotten the van from a friend.[3] Bright and Edmonds were removed from the vehicle and the van was then towed to the Police Auto Squad. In her statement to police, Edmonds stated that she had seen Bright with a little silver gun with tape on the handle on September 2, 2010.

Upon a search of the van in the Police Auto Squad, Detective Fetters recovered a cell phone belonging to Bright, as well as the vehicle's registration and insurance cards in the name of Eric Jones. Additionally, Investigator Mujica photographed the van and was able to lift eight (8) partial fingerprints from inside and outside of the vehicle. The latent print examiner then examined the eight partial fingerprints and identified four (4) of them as belonging to Bright – two from the driver's door window and two from a CD recovered from the driver's side map pocket. Further police investigation also revealed cell phone records that indicated that Bright's cell phone had used the cell tower nearest Park Avenue and Allegheny Avenue at the time of the meeting with Davis and that Bright's cell phone had used the cell tower nearest the 200 block of North 12th Street at the time of the ticket issued by the Philadelphia Parking Authority.

## DISCUSSION

### Admission of the testimony of Martel Davis

The admission and exclusion of evidence is a matter within the discretion of the trial judge and shall only be overturned upon a finding of abuse of discretion.[4] With regard to unlawfully obtained information, the longstanding precedent of the

---

[3] Contrastingly, earlier in the day, Bright had told his former girlfriend, Ebony Jones, to mind her own business and Bright had told Edmonds that his car was in the shop and that his employer had allowed him to use the green van when each of the women had inquired as to why he was not driving the car she had previously seen him drive.

[4] *Com. v. Vandivner*, 962 A.2d 1170, 79 (Pa. 2009).

5

exclusionary rule, as set forth in *Mapp v. Ohio*[5], prohibits the introduction of such evidence at trial.[6]  As stated by the Supreme Court of Pennsylvania, the rule was designed to "deter unlawful police practices by depriving law enforcement officials of the benefits derived from using unlawfully obtained information."[7]  The Court clarified, however, that where such evidence "does not represent an exploitation of the unlawful police practices the exclusion of relevant testimony would serve only to frustrate the objectives of the adjudicative process without providing any enhancement of that process."[8]  As such, the requisite exclusion of unlawfully obtained information does not apply where the evidence would have been discovered in the course of a lawfully conducted investigation.[9]  Moreover, the Supreme Court of the United States has opined that the proffer of live witness testimony is not the same as the proffer of tangible evidence.[10]  As stated by the Court:

> The proffer of a living witness is not to be mechanically equated with the proffer of inanimate evidentiary objects illegally seized. The fact that the name of a potential witness is disclosed to police is of no evidentiary significance, per se, since the living witness is an individual human personality whose attributes of will, perception, memory and volition interact to determine what testimony he will give. The uniqueness of this human process distinguishes the evidentiary character of a witness from the relative immutability of inanimate evidence.[11]

In making this determination, the Court reasoned that live witness testimony differed from tangible evidence in that "[w]itnesses can, and often do, come forward and offer evidence entirely of their own volition. And evaluated properly, the degree of free will

---

[5] 367 U.S. 643 (1961).
[6] *Id.*
[7] *Com. v. Brown*, 368 A.2d 626, 630 (Pa. 1976) (citing *Mapp v. Ohio*, 367 U.S. 643 (1961)).
[8] *Com. v. Brown*, 368 A.2d 626, 630 (Pa. 1976).
[9] *Id.* at 631.
[10] *United States v. Ceccolini*, 435 U.S. 268, 277 (1978).
[11] *Id.*

6

necessary to dissipate the taint will very likely be found more often in the case of live-witness testimony than other kinds of evidence."[12]

In the instant appeal, Bright claims that this court erred in not suppressing the live testimony of witness Martel Davis as fruit of the poisonous tree, asserting that Mr. Davis' identity and testimony were obtained through Bright's statement to the police, which this court found to be involuntary and necessarily suppressed. This court disagrees. After a lengthy pre-trial motion, this court made several evidentiary findings that were placed on the record on February 7, 2013. First, this court determined that Bright's September 8, 2010 statement to police was not voluntary and thus, the statement was necessarily suppressed from trial. Next, this court concluded that Martel Davis' September 8, 2010 statement to police was an exploitation of the unlawful conduct leading to Bright's involuntary statement, given the close temporal proximity and lack of an independent source, and thus, Davis' statement was also suppressed from trial. Finally, this court determined that Martel Davis would be permitted to testify as a witness at trial, provided that he appeared in court willingly and without force and that his testimony was voluntary. This court reasoned that the taint of the unlawful police conduct warranting the suppression of Bright's and Davis' custodial statements was removed by the ongoing police investigation that would have occurred without the statement of Mr. Bright. The police obtained statements of other individuals, particularly Sharleen Tindal and Terrance Sparks, placing another person with Bright at the time of the shooting and they also obtained numerous sets of phone records. As such, the police would have continued to investigate who else was with Bright on the night of the shooting and who else was making phone calls around the time of the shooting.

_____

[12] _Id._ at 276-77.

7

Through this continued investigation, the identity of Martel Davis would have been discovered via means that were independent from Bright's involuntary statement and thus, this court properly concluded that the taint was removed and that Davis could provide live testimony, if he appeared for trial of his own volition.

## Sentencing

Both the defendant and the Commonwealth have the right to appeal the legality of a sentence.[13] A challenge to the legality of a sentence may be raised as a matter of right, is non-waivable, and may be entertained so long as the reviewing court has jurisdiction.[14] An appellate court may only reach the merits of an appeal that challenges the discretionary aspects of a sentence "where it appears that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code."[15] A substantial question arises where defendant advances a "colorable argument that the sentence imposed is either inconsistent with a specific provision of the code or is contrary to the fundamental norms that underlie the sentencing process."[16] A claim that the sentencing court imposed an unreasonable sentence by sentencing outside of the guidelines would present such a substantial question for review.[17]

The sentencing guidelines however, are advisory only. The trial court must consider the character of the defendant and the particular circumstances of the offense, and must impose a sentence that is "consistent with the protection of the public, the

---

[13] 42 Pa. C.S. §9781(a).
[14] *Com. v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005).
[15] *Com. v. Urrutia*, 653 A.2d 706, 710 (Pa. Super. 2005).
[16] *Com. v. Maneval*, 688 A.2d 1198, 1200 (Pa. Super. 1997).
[17] *Com. v. Hess*, 745 A.2d 29, 30 n.3 (Pa. Super. 2000); *See also Com. v. Davis*, 737 A.2d 792, 798 (Pa. Super. 1999).

8

gravity of the offense, and the rehabilitative needs of the defendant."[18] If the sentencing court decides that it is appropriate to sentence outside the guidelines, then it may do so, as long as it provides reasons.[19] The Pennsylvania Supreme Court has stated that if the sentencing court provides reasons indicating it was not unreasonable to depart from the guidelines, then the reviewing court must affirm the sentence.[20]

In the instant matter, Bright claims that this court provided insufficient and/or improper reasons for imposing aggravated range sentences by focusing on Bright's prior criminal record, which was already accounted for in his prior record score and the offense gravity scores of the offenses. This court disagrees. This court considered Bright's background, age, and the nature of his crime and set forth its analysis of the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant, pursuant to 42 Pa.C.S. § 9721(b). For ease on review, this court has included such analysis below:

> I do take into consideration Mr. Bright's background, the hardship that it obviously has on anyone's family and himself but in the end, **I am going to stay within the guidelines but I am going to be in the aggravated range of the guidelines when I do sentence because when I add all of these things up, the protection to the community with regard to the fact that Mr. Bright seems to have an escalating way of behavior, has not been amenable to people who have tried to help him along the way.** I am not demonizing him in any way. I think many young men in the City of Philadelphia at his age seem to go in this projector of getting involved in drugs, selling drugs, dealing how they deal but that does not mean simply because there is a lot of young men who engage in this, that it is not a harm to the community. I do believe the harm here is severe. **The fact that he stole someone's car or was involved in the stealing of the car, I think the jury, when they found him guilty of the theft, that it does have that active component, that he wasn't just a passive recipient or the gun, whichever it is that they considered, that they didn't think that Mr. Bright was a passive participant in it. They didn't believe that and, therefore, the harm to the community is severe.** It is

---

[18] 42 Pa.C.S. § 9721(b); *Com. v. Guth*, 735 A.2d 709, 711 (Pa. Super. 1999).
[19] *Com. v. Gibson*, 716 A.2d 1275, 1277 (Pa. Super. 1999).
[20] *Id.* (citing *Com. v. Smith*, 673 A.2d 893 (Pa. 1996)).

9

thought just drugs that are violent but stealing people's things with a gun is violent and it leads to a lot of violence in the city obviously. I do not believe Mr. Bright expressed to me any remorse and I do believe there is a very high risk of Mr. Bright committing another crime and I say that because of the escalating nature of his crime and his age. I believe that Mr. Bright is 24 years old and that is the age when, unfortunately, some people don't believe that young men even mature -- if you ask, some people say men don't mature until they are 42 but the law even recognizes there is an increased risk of young people before they reach their 25th birthday, if they haven't engaged in certain factors, that it appears that he was in his early 20s when he committed this offense. **He appears to have a relative, consistent history of committing offenses and his offenses have been like one another, in the same neighborhood as one another and that there has been an escalating nature and just sort of a cold review of that is that he is at a very high risk to commit another crime and I do believe that if I sentence in a standard range or mitigated range of guidelines, that it would depreciate the seriousness of the crime** and I do, of course, though recognize the need to put Mr. Bright in custody, which I don't always actually believe that you can rehabilitate someone, and I do believe that Mr. Bright is going to have to rehabilitate himself. I don't believe it is something that the prison is going to be able to do for him and I do share the District Attorney's belief that the efforts of the system, either through county or I'm not sure if he had a state sentence, weren't successful in rehabilitating the Defendant and so the sentence really takes that into consideration. (emphasis added)[21]

Bright has had contact with the criminal justice system in the past, resulting in his prior record of three (3). The offense gravity score for the VUFA § 6105 charge is ten (10); therefore the appropriate sentencing guidelines for that charge are 42–54 +/- 12 and the statutory maximum is ten years. The offense gravity score for the VUFA § 6106 charge is nine (9); therefore the appropriate sentencing guidelines for that charge are 30–42 +/- 12 and the statutory maximum is seven years. The offense gravity score for the Theft by Unlawful Taking charge is five (5); therefore the appropriate sentencing guidelines for that charge are 6–16 +/- 3 and the statutory maximum is seven years. After considering the information heard at trial and the recommendation from the Commonwealth and defense counsel, this court decided that the appropriate sentence

---

[21] N.T. 6/14/2013 at 36-39.

10

for Bright should be 5–10 years of imprisonment on the VUFA § 6105 charge, 3.5–7 years of imprisonment on the VUFA § 6106 charge, and 1.5–7 years of imprisonment on the Theft by Unlawful Taking charge, all to run consecutively, for an aggregate sentence of 10–24 years of imprisonment. Although the sentences imposed on the charges of VUFA § 6105 and Theft by Unlawful Taking were aggravated, they were within the respective statutory maximums and, as such, were not harsh, excessive, or illegal.

Bright makes a claim of insufficiency of the evidence relating to whether the firearm at issue was loaded, as discussed in this Opinion below; however, the difference in the guidelines based upon the offense gravity score for a loaded and unloaded firearm had no impact on this court's sentence on the VUFA charges. Although the sentence on each VUFA charge would be outside of the guidelines, if using the offense gravity score for an unloaded firearm, this court determined that the guidelines generally were not sufficient to address severity of the crime, as the sentences were aggravated even based upon the higher offense gravity scores of a loaded firearm. This court found that the nature of the crime and Bright's involvement in the crime, as found by the jury beyond a reasonable doubt, were such that the statutory maximums, rather than the guidelines, were central to the fashioning of the sentences imposed.

### Denial of motion for a mistrial

Prosecutorial misconduct occurs when a prosecutor intentionally undertakes actions in order to prejudice the defendant to the point where he has been denied a fair trial.[22] In drawing a distinction between mere error and misconduct, our Superior Court

---

[22] *Com. v. Chmiel*, 777 A.2d 459, 464 (Pa. Super. 2001).

11

opined that "[a] fair trial, of course is not a perfect trial. Errors can and do occur. That is why our judicial system provides for appellate review to rectify such errors. However, where the prosecutor's conduct changes from mere error to intentionally subverting the court process, then a fair trial is denied."[23] In assessing a claim of prosecutorial misconduct, the court must determine whether the unavoidable effect of the prosecutor's conduct was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict.[24]

On appeal, Bright asserts that this court erred in denying his motion for mistrial where the prosecutor's examination of witness Martel Davis implicated statements previously suppressed by this court and were calculated to elicit responses from the witness referencing those suppressed statements. This court disagrees. At the outset, this court notes that Martel Davis was a difficult witness; despite appearing in court of his own volition, he was unwilling to answer many of the prosecutor's questions. As such, this court permitted the prosecutor to use leading questions in the course of direct examination. For ease on review, this court has included the specific portions of the prosecutor's examination of Martel Davis, leading to Bright's motion for a mistrial, as well as this court's response to the objections of defense counsel:

> MR. HANDRICH: You don't remember receiving a small silver gun from the defendant, that you gave back to him a couple of days later?
> MR. SCHRADING: Objection, Your Honor.
> THE COURT: Overruled.
> WITNESS: I don't remember receiving a gun. The guy asked me that in the statement. I don't remember receiving a gun, a small silver gun that night, no.
> MR. SCHRADING: Objection, Your Honor.

---

[23] Id.
[24] Id.

12

**THE COURT:** Well, he's saying he doesn't remember receiving a gun that night.[25]

----------

**MR. HANDRICH:** Well, you're not remembering because you don't want to tell the ladies and gentlemen of the jury what you know about this case. Is that why you're not remembering?

**WITNESS:** No. I'm not remembering --

**MR. SCHRADING:** Objection. This is argument, Judge.

**THE COURT:** Finish your answer.

**WITNESS:** (Continued) I'm not remembering because I don't want to remember. Like I said when I spoke earlier, I lost a lot back then. I lost my job that he's speaking about, my manager job. I lost that. And it was embarrassing. So I personally made it my business not to remember anything. And I didn't want to. And nobody has got back with me to make me remember, and I don't want to remember. And the same thing I spoke to the detectives in the statement. I don't remember and you're not going to make me remember. So, I don't.

**MR. HANDRICH:** And when you say "I don't remember," it's something you wanted to put out of your mind, we're talking about your cousin, Quinton Bright, coming to your house and giving you a gun to get rid of --

**WITNESS:** And that's why I'm in this situation, because I sold a gun. As a man, I can take that. But that's all I remember. And I know that I'm here for selling a gun.

**MR. HANDRICH:** And the other part you don't want to remember is him saying, "Hey, I shot somebody" --

**MR. SCHRADING:** Objection, Your Honor.

**THE COURT:** Sustained.

**MR. SCHRADING:** This is testifying.

**THE COURT:** Sustained.

**MR. SCHRADING:** This is absolutely --

**THE COURT:** Sustained. And you're not going to argue in front of the jury. When I say "sustained," it's sustained.[26]

The two instances in which Martel Davis' responses referenced his statement were completely unsolicited by the prosecutor's inquiry. Mr. Davis was an agitated witness who did not wish to answer certain questions that the prosecutor was properly able to ask and, in his frustration, he himself made reference his prior statement without any such reference being elicited by the prosecutor. As such, this court has determined that

----

[25] N.T. 3/12/2013 at 140-141.
[26] N.T. 3/12/2013 at 142-143.

13

no prosecutorial misconduct occurred from this portion of the examination. Although the subsequent inquiry from the prosecutor about Mr. Davis not remembering that Bright said "Hey, I shot somebody" made an improper reference to the witness's suppressed statement, this court responded to the objection of defense counsel and, in correcting the prosecutor's misstep, was able to ensure that Bright received a fair trial. As such, this court has determined that the prosecutor's conduct did not have the unavoidable effect of prejudicing the jury to form a fixed bias and hostility toward the defendant or to impede the rendering of a true verdict, especially in consideration of the fact that the jury acquitted Bright of the homicide charge.

### Sufficiency of the evidence

The standard applied when reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.[27] In applying this test, the Superior Court may not weigh the evidence and substitute its judgment for that of the fact-finder. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless, the evidence is so weak and inconclusive that as a matter of law, no probability of fact may be drawn from the combined circumstance.[28] The Commonwealth may satisfy its burden of proving an element of the crime beyond a reasonable doubt through the use of wholly circumstantial evidence. In applying the test, the whole record must

---

[27] *Com. v. Heberling*, 678 A.2d 794, 795 (Pa. Super. 1996) (citing *Com. v. Williams*, 650 A.2d 420 (Pa. 1994)).
[28] *Com. v. Cassidy*, 668 A.2d 1143, 1144 (Pa. Super. 1995).

14

be evaluated and all evidence received must be considered.[29] Additionally, any challenge to the sufficiency of the evidence must specify the element or elements upon which the evidence was insufficient; otherwise the claim is waived.[30]

### Possession of a firearm

On appeal, Bright claims that the evidence was insufficient to sustain his conviction for VUFA § 6106 beyond a reasonable doubt because the evidence did not establish that he "possessed" a firearm. This court disagrees, having found the evidence to be more than sufficient to support the jury's verdict. In this Commonwealth, pursuant to the Uniform Firearms Act, the term "firearm" is defined by statute as:

> [a]ny pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.[31]

Thus, in accordance with the statute, the jury need only find that the firearm at issue was any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. At trial, the jury heard testimony from Sharleen Tindal, Martel Davis, and Deona Edmonds, each of whom provided information about seeing Bright in the possession of a firearm. Sharleen Tindal's testimony established that on the night Eric Jones was killed, she had walked up to the corner from where Bright and Jones were standing and moments later she heard a gunshot. When she turned around, she saw Jones on the ground and Bright yelled to her "Bitch, don't move"[32] while pointing a gun at her, after which she ran

---

[29] Com. v. Valette, 613 A.2d 548, 549 (Pa. 1992).
[30] Com. v. Williams, 959 A.2d 1252, 1257 (Pa. Super. 2008).
[31] 18 Pa.C.S § 6102.
[32] N.T. 3/13/2013 at 189:24-25.

15

away. Martel Davis' testimony established that the day after Jones was killed, Bright gave Davis a silver revolver that Davis then sold for him. A couple of days later, Davis gave Bright the money from the sale of the revolver and also gave him another gun. Finally, the testimony of Deona Edmonds established that a couple of nights before Bright was arrested, she saw Bright with a small silver gun, which she described as a handgun, that had tape around the handle. She stated that Bright put the gun in his pocket while they sat on the steps to talk. The statutory definition of a firearm merely requires that it be "any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches." Based upon the testimony of Sharleen Tindal and Martel Davis regarding how they each perceived Bright's actions with the particular gun, the jury was free to infer that the firearm in Bright's possession was a pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. More poignant, however, was the testimony of Deona Edmonds, which described the gun in Bright's possession as a small silver handgun, from which the jury was able to infer that it was a pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. As such, this court has found that the evidence was sufficient for the jury to find, beyond a reasonable doubt, that Bright possessed a firearm, thereby sustaining the VUFA § 6106 and VUFA § 6105 convictions.

### Loaded firearm

On appeal, Bright also claims that the evidence was insufficient to prove that the firearm central to the VUFA § 6106 conviction was a loaded firearm. This court disagrees, having found the evidence to be more than sufficient to support the jury's verdict. This court found that, given the various firearms described by witnesses as

16

being in Bright's possession, there were numerous sets of facts that would have supported Bright's possession of a loaded firearm. There was one gunshot heard at the time of the killing and Mr. Bright was holding a gun. This provides enough circumstantial evidence to infer that the gun that Ms. Tindal saw Bright possessing was loaded. Moreover, there was sufficient evidence presented for the jury to infer that the gun referred to by all of the witnesses as in the possession of Mr. Bright was the same gun, not separate guns.

## CONCLUSION

For the reasons set forth in this Opinion, the Superior Court should affirm this court's admission of evidence, the jury's finding of guilt, and the sentence imposed in this matter.

Carpenter, J.

17